UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAWN W., | ) |
| Plaintiff, | ) No. 17 cv 8998 |
| v. | ) Magistrate Judge Susan E. Cox |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dawn W.[1] appeals the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability benefits under Titles II and XVI of the Social Security Act. Plaintiff filed a Brief in Support of Reversing the Decision of the Commissioner, which the Court construes as a motion for summary judgment, and the Commissioner filed a cross-motion for summary judgment. For the following reasons, Plaintiff's motion [dkt. 16] is granted, and the Commissioner's cross-motion [dkt. 28] is denied. The matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**I.  Background**

Plaintiff was born in 1966. [Administrative Record ("R.") 134.] She is five feet, six inches tall, and as of May 2017 (when the most recent administrative hearing was held), she weighed 280 pounds. [R. 1834, 1850.] She suffers from numerous severe impairments: obesity; lumbar degenerative disc disease; a history of hyperthyroidism/thyroid nodules, status-post surgery/hypokalemia; hypertension; depression; and anxiety. [R. 1796.] Plaintiff also alleges that she suffers from fibromyalgia and bipolar disorder. [R. 566, 1796, 1845.] Plaintiff contends she became

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

unable to work due to disability on November 26, 2008. [R. 134, 141, 1840.]

Plaintiff completed one year of college and has worked in various semi-skilled and skilled jobs in an office environment, although she left several of these jobs after working for only short periods of time. [R. 47, 192, 209, 602-04, 877, 886-93, 1857.] For example, in 2010, Plaintiff was terminated after working for about four or five months as a medical office receptionist because she had been absent 12 days in a 90-day period. [R. 282, 603, 934.] In April 2011, Plaintiff began working as an office manager at a physical therapy clinic, Maximum Rehabilitation Services. [R. 567, 604, 934.] This started out as a full-time position, but Plaintiff found it too stressful to work full time, and she eventually was scheduled to work only 24-32 hours per week. [R. 567-68.] Even then, Plaintiff's attendance "was very limited" and she "missed half of [her] scheduled time." [R. 568-69.] In April or May 2013, Plaintiff left this job after having seizures and becoming unable "to commute and effectively do [her] job." [R. 567-68.] Plaintiff did not work again until February 2016, when she returned to Maximum Rehabilitation Services as a part-time receptionist/insurance clerk because she "needed to have an income." [R. 1838, 1858-59, 1869, 2134.] Plaintiff was originally expected to work 24 hours per week, but she met this threshold only five or six times, and in December 2016, she began working only 10-15 hours per week because of her health issues. [R. 1845-46, 1859, 2133.]

## II.     Procedural History

In April 2009, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging a disability onset date of November 26, 2008. [R. 55-56, 134-35, 141-43.] After her applications were denied initially and on reconsideration, Plaintiff requested an administrative hearing. [R. 55-58, 63-70, 83-88, 93.]

### a.     The First Administrative Hearing, ALJ Decision, and Remand

In October 2010, Administrative Law Judge ("ALJ") Kathleen Mucerino held a hearing where Plaintiff, represented by counsel, and vocational expert ("VE") Matthew Lampley testified. [R. 23-

54.] On December 16, 2010, ALJ Mucerino issued a written decision denying Plaintiff's claims for disability benefits. [R. 7-22.] She found that Plaintiff had the residual functional capacity ("RFC")[2] to perform sedentary work—lifting and carrying a maximum of ten pounds, standing and walking two hours, and sitting six hours in an eight-hour workday—except that Plaintiff was further limited to work involving only occasional fine and gross manipulation. [R. 14.] Based on this RFC and the VE's testimony, ALJ Mucerino concluded that Plaintiff was not disabled, as she could perform jobs that exist in significant numbers in the national economy, such as call operator and surveillance systems monitor. [R. 17-18.] Because the Appeals Council denied Plaintiff's request for review, ALJ Mucerino's decision became the final decision of the Commissioner. [R. 1-4]; *see Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Plaintiff sought judicial review in this District. [R. 718-21.] On January 3, 2014, Magistrate Judge Keys granted Plaintiff's motion for summary judgment and remanded the case. [R. 651-89.] The Appeals Council, in turn, vacated ALJ Mucerino's decision and remanded the case for further proceedings. [R. 713-14.]

### b. The Second Administrative Hearing, ALJ Decision, and Remand

In September 2014, a different ALJ, Edward Studzinski,[3] held an administrative hearing. [R. 562-616.] Plaintiff, again represented by counsel, appeared and testified, as did VE Turkessa Jackson. [R. 562-64, 567-76, 579-614.] On March 6, 2015, the ALJ issued a written decision denying Plaintiff's claims for disability benefits. [R. 496-527.] In doing so, the ALJ found that Plaintiff had the RFC to perform sedentary work as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a) (including the ability to lift and/or carry up to 10 pounds occasionally and lighter weights frequently) with

---

[2] "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

[3] Because two ALJs have rendered decisions regarding Plaintiff's eligibility for disability benefits, the Court clarifies that its further use of the term "ALJ" refers to ALJ Studzinski unless otherwise specified.

numerous additional limitations and exceptions. [R. 505.] Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy, such as addresser, hand bander, and final assembler. [R. 518-19.] Thus, Plaintiff again was found not disabled. [R. 519.]

After the Appeals Council denied Plaintiff's request for review, Plaintiff again sought judicial review in this District. [R. 491-94, 1928-29.] On October 18, 2016, District Judge Der-Yeghiayan granted Plaintiff's summary judgment motion in part and remanded the case for further proceedings. [R. 1918-27.] The Appeals Council subsequently vacated the ALJ's March 2015 decision and remanded the case so that the ALJ could hold another hearing, take any further action needed to complete the administrate record, and issue a new decision. [R. 1934.]

### c. The Third Administrative Hearing and ALJ Decision

On remand, an administrative hearing was scheduled for May 5, 2017. [R. 2087.] Shortly before the hearing, the ALJ reached out (through his assistant) to Plaintiff, offering to issue a fully favorable decision of disability if Plaintiff amended her alleged disability onset date to the day before her 50th birthday, August 23, 2016. [R. 2142.] The ALJ's proposed finding of disability presumably would be based on a determination that Plaintiff was limited to sedentary work as of her 50th birthday. [*See* R. 1865 (indication from the ALJ that he could find Plaintiff "disabled as of age 50 because of sedentary work").] Such a determination, accompanied by other factors that are not in dispute, would direct a finding of disability under Medical-Vocational Guideline 201.14. *See Thomas v. Colvin*, 534 F. App'x 546, 549 (7th Cir. 2013); *Marx v. Berryhill*, 2018 WL 1470174, at *4 (E.D. Wis. Mar. 26, 2018); 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.14. Plaintiff declined the ALJ's proposal. [R. 2142.]

At the subsequent May 5, 2017 hearing, Plaintiff, represented by counsel, and VE Thomas Gusloff testified. [R. 1834-37, 1839-41, 1843-47, 1849-52, 1857-64, 1866-76.] During the hearing,

4

the ALJ brought up his offer to issue a fully favorable disability decision if Plaintiff changed her disability onset date to her 50th birthday. [R. 1843, 1855, 1865.] In doing so, the ALJ explained that he was unsure why he had previously assigned Plaintiff an RFC that included a sedentary restriction and that the more he looked at the record, the less he saw "that would suggest that [Plaintiff was] limited to sedentary work." [R. 1843, 1852, 1854-55, 1864-65.] The ALJ even questioned aloud whether he should "make findings that I don't think are really well supported and find disabled as of age 50 because of sedentary work[.]" [R. 1865.] In the end, it appears the ALJ's proposal was driven not by a belief that Plaintiff was limited to sedentary work, but by a desire to end the case:

> [I]f we were able to reach some finality, that was one reason that I thought that the idea of amending to the 50th birthday would be one way to reach some finality, but if your client does not amend, we don't have that finality and it's just more time, more resources of the government, more fees to you and your firm and more delay for your client.

*Id.* Plaintiff, however, again declined to amend her disability onset date. [R. 1801, 1865.]

On August 31, 2017, the ALJ issued a written decision again denying Plaintiff's disability claims. [R. 1790-1833.] At Step One, despite noting that it appeared that Plaintiff had performed substantial gainful activity for at least some periods of time, the ALJ gave her "the benefit of [the] doubt" and determined that she had not engaged in substantial gainful activity since October 20, 2007.[4] [R. 1795-96.] At Step Two, the ALJ found that Plaintiff had the following severe impairments: obesity; lumbar degenerative disc disease; a history of hyperthyroidism/thyroid nodules, status-post surgery/hypokalemia; hypertension; depression; and anxiety. [R. 1796.] The ALJ also considered fibromyalgia to give Plaintiff "the benefit of the doubt" even though he concluded that it was not a medically determinable impairment. [R. 1796-97.] At Step Three, the ALJ determined that Plaintiff

---

[4] The correct alleged disability onset date for the applications at issue is November 26, 2008; October 20, 2007 was the onset date Plaintiff alleged in a previously-filed disability application that was denied because she failed to meet with a consultative examiner. [R. 32-33, 134, 141, 1840.] On remand, the ALJ should ensure that Plaintiff's disability claims are evaluated using the correct alleged onset date.

5

did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 1797-99.]

Before Step Four, the ALJ found that Plaintiff had the RFC to perform work with the following restrictions:

- she can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently;

- she must be allowed to alter her position between standing and walking and sitting for up to five minutes out of every 60 minutes and, while doing so, she need not abandon her work station or be off task;

- she can occasionally stoop, kneel, balance, crouch, crawl, and climb ramps and stairs;

- she can never climb ladders, ropes, or scaffolds;

- she is limited to working in non-hazardous environments, *i.e.*, no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, and she should avoid concentrated exposure to unguarded hazardous machinery such as a press punch and large robotic machinery;

- she is limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment;

- she can work at an average production rate, but not at an above average, or variable pace;

- she should not be required to multitask and is incapable of work requiring considerable self-direction;

- she is precluded from work involving direct public service, in person or over the phone, although she can tolerate brief and superficial interaction with the public that is incidental to her primary job duties;

- she should not work in crowded, hectic environments; and

- she can tolerate brief and superficial interaction with co-workers and supervisors as is common in unskilled work, but she cannot perform teamwork or tandem tasks.

[R. 1799.] The ALJ acknowledged the RFC he had crafted in his previous decision, which included a sedentary work restriction, but he determined that the previous RFC was "overly generous" and that a "light residual functional capacity [was] more appropriate in light of no doctor's opinion of physical

6

limitations." [R. 1817-18.]

At Step Four, the ALJ found that Plaintiff could not perform any of her past relevant work. [R. 1820.] At Step Five, though, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy, such as marker, routing clerk, linen grader, and insert machine operator. [R. 1821.] Because of his Step Five determination, the ALJ found Plaintiff not disabled. [R. 1821-22.]

Plaintiff did not file exceptions to the ALJ's decision with the Appeals Council, making the ALJ's August 2017 decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(d), 416.1484(d). This action followed.

### III. Social Security Regulations and Standard of Review

To be eligible for DIB or SSI, an applicant must be disabled under the Social Security Act. *Myers v. Berryhill*, 2018 WL 6696627, at *3 (N.D. Ill. Dec. 20, 2018). ALJs conduct a sequential five-step inquiry to determine whether a claimant is legally disabled, asking (1) Is the claimant unemployed? (2) Does the claimant have a severe impairment? (3) Does the claimant's impairment meet or equal an impairment specifically listed in the regulations? (4) Is the claimant unable to perform a former occupation? and (5) Is the claimant unable to perform any other work in the national economy? *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (internal quotations omitted); *Young*, 957 F.2d at 389. The claimant bears the burden of proof at steps one through four. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). At the final step, the burden shifts to the Commissioner; if she shows that the claimant can "perform work that exists in a significant quantity in the national economy," the claimant is not

disabled. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In disability benefits cases, the scope of a court's review is limited to determining whether the Commissioner's final decision adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing an ALJ's decision, the Court may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the" ALJ. *Clifford*, 227 F.3d at 869. Although the Court's review is deferential, *Steele v. Barnhart*, 290 F.3d 936, 938 (7th Cir. 2002), the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusions. *Id.* at 941 (internal citation and quotations omitted).

## IV. Discussion

Among other things, Plaintiff asserts that the ALJ: (1) did not support his RFC finding that Plaintiff could stand, walk, or sit for up to an hour so long as she could change positions for five minutes every hour; and (2) did not properly accommodate Plaintiff's moderate limitations in concentration, persistence, or pace. The Court agrees on both points and finds that remand is necessary.

### a. The ALJ Did Not Build an Accurate and Logical Bridge From the Evidence to His RFC Assessment

An ALJ's RFC assessment must be "based upon the medical evidence in the record and other evidence, such as testimony by the claimant or [her] friends and family." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). In the written decision, the ALJ must explain "how the evidence, both objective and subjective, supports each conclusion" contained in the RFC assessment. *Zblewski v. Astrue*, 302 F. App'x 488, 492 (7th Cir. 2008). In other words, the ALJ must build an "accurate and

logical bridge from the evidence" to the RFC conclusions. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004). An ALJ's failure to explain how he arrived at these conclusions "is sufficient to warrant reversal." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

Here, the ALJ did not build an accurate and logical bridge between the evidence in the record and his conclusion that Plaintiff "must be allowed to alter her position between standing and walking and sitting for up to five minutes out of every 60 minutes" and that, "while doing so, she need not abandon her work station or be off task." [R. 1799.] The ALJ made no attempt to explain what evidence led him to conclude either that Plaintiff could sit, stand, or walk for 60 minutes at one time (as opposed to a longer or a shorter duration) or that assuming a different position for five minutes (rather than a longer or shorter period of time) would then allow Plaintiff to resume her initial position. Nor does the Commissioner point to any portion of the ALJ's decision or the evidentiary record as providing the requisite support or explanation.

Indeed, the only time the ALJ mentioned these restrictions (other than in his RFC assessment) was in explaining that he intended for them to account for Plaintiff's "testimony regarding her need to shift positions." [R. 1799, 1815.] But the Court cannot understand why the ALJ believed these restrictions accomplished this goal. Plaintiff testified at both the September 2014 and May 2017 administrative hearings that she could stay in any one position (sitting, standing, or walking) for only *10-15 minutes*. [R. 597, 1851.] At the latter hearing, Plaintiff even stood up from her seated position four or five times in less than an hour. [R. 1836, 1858, 1876.] Moreover, the Court has not seen any testimony regarding the amount of time Plaintiff needs to be in the shifted-to position before she can return to her initial position. In short, Plaintiff's testimony does not provide a basis for the ALJ's 60-minute and 5-minute restrictions.

The ALJ did not explain how the medical or testimonial evidence shows that Plaintiff can sit,

9

stand, or walk for 60 minutes at one time or that she can resume such a position for another 60 minutes after changing positions for five minutes. Without this explanation, the Court is "unable to 'trace the path of [the ALJ's] reasoning.'" *Hickey v. Berryhill*, 2017 WL 5001417, at *4 (N.D. Ill. Nov. 2, 2017) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). As such, the ALJ's RFC finding is flawed and requires remand. *See id.* at *3-4 (remanding where ALJ failed to explain how evidence supported an RFC that, as here, allowed the claimant to sit, stand, or walk for 60 minutes continuously, after which \ claimant would need to assume a different position for five minutes before resuming initial position); *Brenda S. v. Berryhill*, 2019 WL 1747360, at *2-3 (N.D. Ill. Apr. 18, 2019) (remanding where ALJ did not explain how evidence supported RFC allowing claimant to take a five-minute break after standing or walking for 45 minutes or more).

    **b.**    **The ALJ Did Not Properly Accommodate Plaintiff's Moderate Difficulties in Maintaining Concentration, Persistence, or Pace**

Plaintiff also contends the ALJ did not properly accommodate her moderate limitations in maintaining concentration, persistence, or pace. In both assessing a claimant's RFC and posing a hypothetical question to a VE, an ALJ must account for all a claimant's limitations, including any limitations in concentration, persistence, or pace. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Mischler v. Berryhill*, 2019 WL 1299948, at *5 (7th Cir. Mar. 20, 2019).

Here, the ALJ evaluated the severity of Plaintiff's mental impairments (anxiety and depression) and determined she experienced moderate limitations in concentrating, persisting, or maintaining pace. [R. 1796, 1798.] The ALJ then explained that he accounted for these limitations by restricting Plaintiff to "simple work with average but not variable production rate." [R. 1798.] The ALJ's "simple" work RFC restrictions limited Plaintiff to "simple, routine tasks, work involving no more than simple decision-making…[and] work requiring the exercise of only simple judgment" and

precluded any conditions requiring Plaintiff to multitask or work with considerable self-direction.[5] [R. 1799.] The ALJ's "production rate" RFC restriction limited Plaintiff to working "at an average production rate, but not at an above average or variable pace." *Id.* The ALJ included these (or similar) restrictions in a hypothetical question to the VE, Mr. Gusloff. [R. 1872.]

These restrictions, however, do not adequately capture Plaintiff's moderate limitations in concentration, persistence, or maintaining pace. *See Lear v. Berryhill*, 2018 WL 1225046, at *7 (N.D. Ind. Mar. 9, 2018) (finding that limiting a claimant to "simple, routine work and to no more than average production requirements" does not "adequately capture moderate limitations in concentration, persistence, and pace" under Seventh Circuit precedent); *Ingle v. Colvin*, 2016 WL 270006, at *8-9 (S.D. Ill. Jan. 22, 2016) (same). The Seventh Circuit has repeatedly found that requiring a claimant to perform only "simple" work—whether in the form of tasks performed, judgments and decisions made, or instructions followed—does not account for moderate limitations in concentration, persistence, or pace. *Winstead v. Berryhill*, --- F.3d ----, 2019 WL 1941179, at *4 (7th Cir. Apr. 3, 2019) ("simple, routine, repetitive tasks" limitation); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) ("simple work instructions, "simple work place judgments" and "routine work" limitations); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) ("simple, routine, and repetitive tasks" limitation); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618, 620-21 (7th Cir. 2010) ("routine, repetitive tasks with simple instructions" limitation); *Mischler*, 2019 WL 1299948, at *5 (simple, routine, and repetitive task limitation); *Paul v. Berryhill*, 760 F. App'x 460, 463, 465 (7th Cir. 2019) (same); *Radosevich v. Berryhill*, 759 F. App'x 492, 494-95 (7th Cir. 2019) ("simple, work-related decisions" limitation). This is because an individual's ability to perform simple work is distinct

---

[5] The ALJ also restricted Plaintiff to "no more than occasional and minor changes in the work setting." [R. 1799.] It is unclear whether the ALJ considered this restriction part of his "simple work" limitation. In any event, limiting Plaintiff to occasional and minor workplace changes addresses her ability to adapt in the workplace, not her difficulties with maintaining concentration, persistence, or pace. *See Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015); *Mischler*, 2019 WL 1299948, at *5.

11

from her ability to "maintain the concentration and focus needed to sustain her performance of" tasks for an extended period of time. *See Paul*, 760 F. App'x at 465; *O'Connor-Spinner*, 627 F.3d at 620 ("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity."); *Mischler*, 2019 WL 1299948, at *5 ("A task can be simple, but a person with a poor attention span may still become distracted and stop working.").

Nor does the ALJ's "average production rate" restriction adequately address Plaintiff's moderate difficulties in concentration, persistence, or pace. The Seventh Circuit has explained that "there is no basis to suggest that eliminating jobs with…a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). The Court similarly does not see how limiting Plaintiff to jobs where she must perform at an average pace serves as an adequate substitute for these difficulties. *See Ingle*, 2016 WL 270006, at *8-9 (finding that a limitation requiring "no more than average production requirements" did not "adequately capture moderate limitations in concentration, persistence and pace").

Moreover, the ALJ did not sufficiently explain what he meant by an "average production rate." *See Varga*, 794 F.3d at 815 (finding it "problematic that the ALJ failed to define 'fast paced production'"); *Lear*, 2018 WL 1225046, at *7 (faulting the ALJ for not defining "average production pace"). Although the ALJ noted that Plaintiff's pace was not "above average or variable" [R. 1799], the first definition merely states the obvious—an average pace, by definition, is not *above* average— and the second definition does not shed any light on the actual speed of the non-variable pace required of Plaintiff. Indeed, even though the average production rate for a job presumably depends on the particular job at issue, there is no indication the VE assessed or considered any potential differences in the production rates for the various jobs he identified. [*See* R. 1869-76.] Without a definition for "average" production rate, it was "impossible for the VE to assess whether a person with [that limitation] could maintain the pace proposed." *Varga*, 794 F.3d at 815; *see Mischler*, 2019 WL

12

1299948, at *5 (finding that a "no piecework or fast moving assembly line type work" limitation, without more, made it impossible for a VE to assess whether a claimant with that limitation could maintain the proposed pace); *Paul*, 760 F. App'x at 465 (finding that a reference to "flexible pace" without a definition was insufficient to allow VE to determine "whether someone with [the claimant's] limitations could maintain the proposed pace or what the proposed pace even is"); *Lear*, 2018 WL 1225046, at *7 (finding that the ALJ erred by failing to define "average production pace").

In addition to defending the just-discussed RFC restrictions, the Commissioner contends that the VE at the May 2017 hearing, Mr. Gusloff, was fully aware of Plaintiff's limitations in maintaining concentration, persistence, or pace because he heard Plaintiff testify that at her current part-time job, "[i]t's a concentration issue for me. I very easily get distracted by the other employees' conversation[s] and there's really a[,] I guess you would say[,] low production at that time." [R. 1861; Dkt. 29 at 19.] But these few lines of testimony did not inform the VE about the totality of Plaintiff's limitations in concentration, persistence, or pace. For one thing, Plaintiff's "concentration issue" does not necessarily implicate any of her issues with persistence or pace. *Cf. Perez v. Berryhill*, 2019 WL 1293609, at *4 (E.D. Wis. Mar. 21, 2019) (citing *Varga*, 794 F.3d at 815-16) (explaining that the Seventh Circuit "has construed the phrase 'concentration, persistence or pace' in an 'inclusive,' as opposed to 'exclusive' sense, meaning that the word 'or' in this context means 'and'"). Furthermore, nothing in the record suggests Plaintiff's difficulties with concentration derive *solely* from overhearing coworkers' conversations. Independent of her testimony about her most recent job, Plaintiff reported she could not concentrate for more than 30 minutes, she loses concentration when she is being given spoken instructions, and that she cannot finish what she starts. [R. 221, 248, 901.] At the October 2010 hearing, which Mr. Gusloff did not attend, Plaintiff testified that "running around the office" caused her to lose concentration and focus. [R. 43-45.] At the September 2014 hearing (which Mr. Gusloff also did not attend), Plaintiff testified she could not stay on task for more than 10

to 15 minutes at a time and that she tended to start things without finishing them without any mention of the workplace or being distracted by others' conversations. [R. 591-92.] Plaintiff also testified she cannot follow along with a half-hour news program and she did not have the attention span to read a complete newspaper article. [R. 593.] Medical records also reflect that Plaintiff exhibited impaired attention and concentration at visits to her psychiatrist Dr. Gartel, where she presumably would not be distracted by coworkers' conversations. [R. 1288, 1384, 1386, 1809, 2377-78, 2382-83, 2387-88.] All this evidence suggests Plaintiff experienced difficulties with concentration even when she was not in the workplace and overhearing coworkers' conversations. Thus, the Court cannot assume that the VE was familiar with the entirety of Plaintiff's moderate limitations in concentration, persistence, or pace based on the snippet of testimony identified by the Commissioner. *See O'Connor-Spinner*, 627 F.3d at 619 ("We sometimes have assumed a VE's familiarity with a claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE…heard testimony directly addressing those limitations.").

Although an RFC or a hypothetical question need not expressly refer to a claimant's limitations in concentration, persistence, or pace, it "must clearly exclude those tasks" a claimant cannot perform because of those limitations. *Paul*, 760 F. App'x at 465. The Court cannot say the ALJ's "simple work with average but not variable production rate" restrictions did so here. Accordingly, remand is required on this ground as well so the ALJ can craft an RFC and hypothetical questions that adequately accommodate Plaintiff's moderate limitations in concentration, persistence, or pace. *See, e.g.*, *DeCamp*, 916 F.3d at 675-76 (remanding where the only error discussed was the ALJ's failure to adequately address the claimant's moderate limitations in concentration, persistence, and pace); *Radosevich*, 759 F. App'x at 494-95 (same).

    c.    **A Remand Directing an Award of Benefits is Not Appropriate**

The Court last addresses Plaintiff's request for a remand directing an award of benefits as of

August 23, 2016, the day before Plaintiff's 50th birthday. Plaintiff contends that such an award is in line with the Medical-Vocational Guidelines and the two prior ALJ decisions, which confirm her limitation to sedentary work. [Dkt. 16 at 10.]

The Court disagrees. Both previous decisions were vacated and remanded by the Appeals Council. [R. 713-14, 1934.] Thus, the ALJs' previous findings, including their RFC assessments, are of no further import to the case, and they do not "confirm" any particular work restriction. *See Roberts v. Berryhill*, 721 F. App'x 507, 511 (7th Cir. 2018) (explaining that agency decisions that "were properly vacated and remanded by the Appeals Council…could not be binding at a later point in the case"); *Anthony L. v. Berryhill*, 2019 WL 1354419, at *7 (N.D. Ill. Mar. 26, 2019) (finding the Appeals Council's express vacatur of an ALJ's decision "nullified her findings, including the RFC assessment"). Even without an express vacatur, an ALJ is generally "free to reevaluate the facts" on remand. *Houston v. Sullivan*, 895 F.2d 1012, 1015 (5th Cir. 1989); *see also Penrod ex rel. Penrod v. Berryhill*, 900 F.3d 474, 477 (7th Cir. 2018) (noting that the court had found no authority requiring "an ALJ to use the same RFC that a different ALJ used in denying benefits for a prior period"). Otherwise, ALJs would be discouraged "from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate." *Campbell v. Brown*, 822 F.2d 1518, 1522 (10th Cir. 1987).

Plaintiff also suggests that the ALJ's offer to issue a fully favorable ruling if she amended her alleged disability onset date to just before her 50th birthday shows that the evidence supports a sedentary finding. The Court again disagrees. The ALJ's offer was not based on his belief the evidentiary record supported a sedentary finding, but on his desire to end the case. [R. 1865.] In fact, the ALJ made several statements during the May 2017 hearing indicating his belief that the evidence did not support a sedentary restriction. [R. 1843, 1852, 1854-55, 1864-65; *see also* Dkt. 16 at 9 (assertion by Plaintiff that "ALJ Studzinski did not see the basis for a sedentary RFC.").] To be sure,

the Court questions the propriety of the ALJ's proposal, as an award of benefits must be based on a claimant's actual disability, not on a desire to get rid of a case. *See Briscoe*, 425 F.3d at 357. By the same token, though, the ALJ's proposal in these circumstances, even if arguably improper, does not constitute evidence demonstrating disability.

Ultimately, an instruction to award benefits is only appropriate if "all factual issues have been resolved and the record can yield but one supportable conclusion," a finding of disability *Id.* at 355, 357 (internal signals omitted). On remand, the ALJ must craft an RFC, supported by substantial evidence, that complies with this Memorandum Opinion and Order. But at this point, the Court cannot say that such an RFC would inevitably lead to a finding of disability. Thus, Plaintiff's motion is only granted insofar as it requests remand for further proceedings.

**V.   Conclusion**

For the foregoing reasons, the Court must remand this matter for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 16] is granted, and the Commissioner's cross-motion for summary judgment [dkt. 28] is denied.

ENTERED: 5/31/2019

_____
U.S. Magistrate Judge, Susan E. Cox